WHITCRAFT v WOLFE

Docket No. 80231. Submitted July 24, 1985, at Detroit.—Decided
December 17, 1985. Leave to appeal applied for.

Stephen Wolfe filed a complaint against Sports Cars of Birming-
ham, Inc., and Herb Singerman, one of Sports Cars' owners, in
Oakland Circuit Court, in which he alleged: that Sports Cars
agreed to purchase his 1963 AC Cobra sports car for $57,000
with payment to be made at a later date; that he retained a
lien on the Cobra; and that he received only $5,000 of the
purchase price. He sought $52,000 under the contract and
return of the Cobra. Sports Cars and Singerman failed to
answer the complaint and a judgment by default was entered
against them by the circuit court in an order which provided
that possession of the Cobra be returned to Wolfe and granted
authority to an officer of the law to seize the Cobra wherever it
was found. The remainder of Wolfe's complaint was continued,
pending the return of the Cobra to Wolfe and an assessment of
its possible diminished value and the expenses of its recovery.
Meanwhile, Michael Whitcraft had apparently purchased the
Cobra from Sports Cars. Wolfe discovered this and presented
the court order to Whitcraft demanding that the Cobra be
returned to him. Subsequently, Whitcraft was allowed to inter-
vene in Wolfe's action against Sports Cars and Singerman.
Whitcraft brought a motion to set aside the order for the
return of the car to Wolfe arguing that he was a buyer in the
ordinary course of business with a consequent superior right to
the Cobra. Wolfe then amended his complaint adding a third
count alleging fraud on the part of Singerman and Sports Cars

REFERENCES

Am Jur 2d, Automobiles and Highway Traffic §§ 30 et seq.

Am Jur 2d, Fraud and Deceit § 8.

Am Jur 2d, Sales §§ 109, 389.

Am Jur 2d, Summary Judgment §§ 26 et seq.

Liability of state, in issuing automobile certificate of title, for
failure to discover title defect. 28 ALR4th 184.

Reviewability of order denying motion for summary judgment. 15
ALR3d 899.

See also the annotations in the ALR3d/4th Quick Index under
Sales.

and increasing his claim under the contract to $57,000 after checks from Sports Cars and Singerman as partial payment were dishonored. Subsequently, Whitcraft, in a separate action, sought a declaratory judgment declaring that he was a buyer in the ordinary course of business who took good title to the Cobra. He alleged that he purchased the Cobra from Sports Cars in good faith and for a valuable consideration with no knowledge of Wolfe's security interest, that he received the Cobra and a title signed by Wolfe, but was unable to obtain a clear title because Wolfe had fraudulently obtained a duplicate title with full knowledge of Whitcraft's purchase by claiming that the original had been lost, and that Wolfe subsequently granted a security interest in the Cobra to his sister after learning of Whitcraft's purchase. Whitcraft sought an order from the court directing Wolfe to extinguish all interest in the Cobra and sign over the title to him. The circuit court consolidated Whitcraft's action with Wolfe's action against Sports Cars and Singerman. Wolfe filed a second default against Sports Cars and Singerman. After a hearing on Wolfe's fraud claim, the circuit court, finding fraud, granted Wolfe a default judgment against Sports Cars and Singerman for $52,000. The court did not set aside the first default judgment granting Wolfe possession of the Cobra. Wolfe then moved for summary judgment against Whitcraft on Whitcraft's action against him, arguing that Whitcraft had no interest in or title to the Cobra, as he never received a properly endorsed certificate of title. After an evidentiary hearing which was set for Whitcraft's motion to set aside the order to return the car to Wolfe, the circuit court, George H. LaPlata, J., ordered Wolfe to endorse the title to the Cobra over to Whitcraft and to extinguish all security interests in the car and entered a judgment for Wolfe against Sports Cars and Singerman for $62,000. Wolfe appealed as of right. *Held:*

1. The trial court improperly granted summary judgment in favor of Whitcraft on his action against Wolfe. Sports Cars was a necessary party with a definite interest in the subject matter of the lawsuit and whose presence was essential to permit the court to render complete relief. Sports Cars should have been a named defendant in the lawsuit.

2. Summary judgment is proper where there is no genuine issue as to any material fact and the party in whose favor judgment is granted is entitled to judgment as a matter of law. Sports Cars might have possibly raised genuine issues of fact. The trial court impermissibly combined summary judgment and trial procedure in the evidentiary hearing that it held.

Whitcraft was not entitled to summary judgment as a matter of law, since Whitcraft never received a properly endorsed certificate of title, making Sports Cars' sale to Whitcraft void.

3. The trial court's initial default judgment in Wolfe's original action against Sports Cars and Singerman was too broad and while it may have been impliedly set aside by the trial court's final judgment, the Court of Appeals set it aside.

4. On remand, the trial court shall ascertain whether Wolfe seeks rescission of the contract with Sports Cars and determine whether rescission is proper. If rescission is proper and is granted by the trial court, Whitcraft may be ordered to give up possession to Wolfe. Moreover, if rescission is not granted, Whitcraft must give up possession to Wolfe if Wolfe seeks to enforce his security interest in the Cobra. Absent rescission, the contract between Wolfe and Sports Cars is enforceable.

5. Failure to comply with the odometer statute requirements merely renders the transaction voidable by the purchaser. Since Sports Cars defaulted and did not seek to void the transfer in this proceeding, the contract is enforceable.

6. The trial court may order Wolfe to cancel his duplicate title with the Secretary of State in the event of the affirmation of the contract. However, if rescission is granted, Wolfe is entitled to a certificate of title. In that event, the court must assure that the certificate of title held by Whitcraft is ultimately destroyed. The purported security interest Wolfe granted to his sister is clearly not valid. It may only be extinguished in an action against the sister. However, the Court of Appeals hopes that it will be voluntarily extinguished.

Reversed and remanded.

1. JUDGMENTS — SUMMARY JUDGMENT — NO GENUINE ISSUE OF FACT.
   A court considering a motion for summary judgment based on the lack of a genuine issue as to any material fact must, before granting the motion, review the pleadings, affidavits, and other available evidence and, giving the benefit of any reasonable doubt to the opposing party and drawing any inferences in favor of the opposing party, must be satisfied that it is impossible for the claim to be supported at trial because of some deficiency which cannot be overcome (GCR 1963, 117.2[3]).

2. JUDGMENTS — SUMMARY JUDGMENT — WITNESSES — CREDIBILITY.
   A question which turns on the credibility of a witness may not be resolved on a motion for summary judgment.

3. JUDGMENTS — SUMMARY JUDGMENT — ISSUE OF FACT — TRIAL BY AFFIDAVIT — JURY TRIAL.
   A trial court, in granting summary judgment because no issue of

fact exists, should be careful to avoid substituting a trial by affidavit and deposition for a trial by jury (GCR 1963, 117.2[3]).

4. JUDGMENTS — SUMMARY JUDGMENT — WITNESSES — TESTIMONY.

No authority exists in either the General Court Rules of 1963 or the Michigan Court Rules of 1985 allowing a court to take the testimony of witnesses pursuant to a motion for summary judgment.

5. AUTOMOBILES — TRANSFER OF OWNERSHIP — MICHIGAN VEHICLE CODE — UNIFORM COMMERCIAL CODE.

While the Uniform Commercial Code governs the sale of goods, where the specific goods involved are automobiles, the Uniform Commercial Code provisions must be reconciled with those of the Michigan Vehicle Code; the Uniform Commercial Code does not govern the means by which automobile ownership is transferred except perhaps where the Michigan Vehicle Code contains no applicable law (MCL 257.217[b] *et seq.*, 440.1101 *et seq.*; MSA 9.1917[2] *et seq.*, 19.1101 *et seq.*).

6. AUTOMOBILES — TRANSFER OF OWNERSHIP — CERTIFICATE OF TITLE.

Under the statute regarding the transfer of ownership of a motor vehicle, a sale of a vehicle which does not include a properly endorsed and delivered certificate of title is void, and in such circumstances the seller remains the owner (MCL 257.233[4], 257.235[1], 257.239; MSA 9.1933[4], 9.1935[1], 9.1939).

7. CONTRACTS — FRAUD — INDUCEMENT.

Fraud in the inducement to enter into a contract does not render the contract void but merely voidable.

8. AUTOMOBILES — TRANSFER OF OWNERSHIP — CERTIFICATE OF TITLE.

Michigan does not require the transferee's name to be on the certificate of title when a car is sold (MCL 257.233[4]; MSA 9.1933[4]).

9. AUTOMOBILES — TRANSFER OF OWNERSHIP — CERTIFICATE OF TITLE.

The purpose of the odometer statute requirements is to prevent fraud upon the buyer and it only indirectly concerns the transfer of ownership; the statute does not require the written odometer statement to be contained or attached to the certificate of title; failure to comply with the odometer statute requirements merely renders a transaction voidable by the buyer (MCL 257.233a; MSA 9.1933[1]).

*Richard M. Goodman, P.C.* (by *Jonathan L. Walker*), for plaintiff.

*Paul E. Slavin,* for defendant.

Before: GRIBBS, P.J., and T. M. BURNS and M. WARSHAWSKY,* JJ.

PER CURIAM. Defendant, Steven Wolfe, appeals as of right from an order requiring him to endorse the title of a 1963 AC Cobra sports car to plaintiff Michael W. Whitcraft and to extinguish all security interest in it. We set aside the circuit court order and remand for further proceedings.

## FACTS

This case has a rather unusual procedural history. On March 19, 1984, Wolfe filed a complaint against Sports Cars of Birmingham, Inc, and Herb Singerman, one of Sports Cars' owners. Wolfe alleged that on November 14, 1983, Sports Cars agreed to purchase the Cobra from Wolfe for $57,-000 with payment to be made by March 1, 1984, that he retained a lien on the car, and that he received only $5,000 of the purchase price. In Count I of the complaint, Wolfe set forth a contractual claim for $52,000. In Count II, Wolfe set forth a claim, the exact nature of which is unclear. In that count, Wolfe sought "return of the vehicle". However, he did not clearly indicate whether his claim was based on an ownership theory or whether it was based on his security interest in the vehicle. While the count was entitled "Replevin" and he alleged that he was the owner, he also alleged that he was the primary lienholder and that he was entitled to a return of the vehicle pursuant to his security interest.[1] Additionally,

---

* Circuit judge sitting on the Court of Appeals by assignment.

[1] "Replevin" is now known as the action of claim and delivery. See GCR 1963, 757 and MCR 3.105. See also MCL 600.2920; MSA 27A.2920.

Wolfe alleged the possibility that the vehicle had been transferred to a third party.

Sports Cars and Singerman failed to answer and a default was entered against them. On May 15, 1984, the circuit court entered a "partial" default judgment, ordering that possession of the Cobra be returned to Wolfe and granting authority for an officer of the law to seize the vehicle wherever it was found. The remainder of Wolfe's complaint was continued, pending return of the Cobra and an assessment of its possible diminished value and the expenses of recovery.

Meanwhile, Whitcraft had apparently purchased the Cobra from Sports Cars. Wolfe discovered this and took the court order to Whitcraft demanding return of the Cobra. On May 18, 1984, Whitcraft moved to set aside the order for the return of the car to Wolfe, arguing that he had not been a party to the action and, furthermore, that he was a buyer in the ordinary course of business with a consequent superior right to the Cobra.[2] Before the court took any action, Wolfe amended his complaint adding a third count which alleged fraud on the part of Singerman and Sports Cars. Wolfe alleged that, in return for a fraudulent promise to pay him $57,000, he "did part with the title to said automobile". He alleged that at the time that Singerman made the representation to pay the entire $57,000 by March 1, 1984, he (Singerman) knew the statement was false and had no intention to make full payment. Wolfe had received two $3,000 checks from Singerman, both of which were dishonored. Wolfe now sought damages of $57,000 from Singerman and Sports Cars.

---

[2] During a hearing held on June 13, 1984, Wolfe objected to Whitcraft's position as Whitcraft was not yet a party. At the court's suggestion, Whitcraft moved to intervene and that motion was granted. An order granting intervention was entered on June 28, 1985.

On July 10, 1984, in a separate action, Whitcraft filed a complaint for declaratory relief, naming Wolfe as defendant. He asked the court to declare that he was a buyer in the ordinary course of business who took good title to the vehicle. He alleged that he purchased the Cobra from Sports Cars in good faith and for a valuable consideration with no knowledge of Wolfe's security interest; that he received the Cobra and a title signed by Wolfe, but was unable to obtain a clear title because Wolfe had fraudulently obtained a duplicate title with full knowledge of Whitcraft's purchase by claiming that the original had been lost; and that Wolfe subsequently granted a security interest in the Cobra to another individual (his sister) after learning of Whitcraft's purchase. Whitcraft asked the court to order Wolfe to extinguish all interest in the Cobra and sign over the title to Whitcraft. The circuit court ordered Whitcraft's action against Wolfe to be consolidated with the original action by Wolfe against Sports Cars and Singerman. However, Wolfe thereafter raised no claim against Whitcraft and Whitcraft raised no claim against Sports Cars.

Wolfe filed a second default against Sports Cars and Singerman on July 12, 1984, and a hearing was held in regard to the fraud claim on July 18, 1984.[3] Wolfe testified that the Cobra was worth approximately $60,000. He was told by Singerman that to complete the sale and to maintain possession, Sports Cars was required by law to have the car's certificate of title endorsed in blank and given to them, which defendant did. After signing the title, he requested certification of a lien in his favor, on the advice of an attorney, and Sports Cars gave him such a document. The lien and title transfer were never registered with the Secretary

---

[3] Apparently, the hearing was held pursuant to GCR 1963, 520.2(2).

of State. When Wolfe later requested return of the title, he was told that it was lost. Wolfe received only $5,000 for the car and felt that a balance of $52,000 was owing. The trial court found fraud and granted Wolfe a default judgment against Singerman and Sports Cars for $52,000, $60 costs, and interest of $1,709.25 to date. The first default judgment granting Wolfe possession of the vehicle was not set aside.

Wolfe then moved for summary judgment in regard to Whitcraft's claim against him, contending that Whitcraft had no interest in or title to the Cobra, as he never received a properly endorsed certificate of title. Wolfe noted that an evidentiary hearing was scheduled on Whitcraft's motion to set aside the order to return the car. When the evidentiary hearing was held, it encompassed not only the evidentiary claims of Whitcraft, but also Wolfe's proposal for summary judgment. After much testimony, the court noted that the party causing the problem, Sports Cars, was not before the court but, nevertheless, rendered a decision in the matter. The court balanced the equities with respect to both litigants, considered the testimony and credibility of the witnesses, and made findings of fact. The trial court found that Wolfe and Sports Cars entered into an agreement regarding payment. Wolfe turned over a signed title that could mislead a prospective purchaser and agreed that he would not receive his money until March, 1984. In the absence of this agreement, the court would have found that Sports Cars' fraud prevented any transfer to Sports Cars. Since Wolfe entered into the agreement, the court reluctantly found that Whitcraft should prevail and receive the Cobra with clear title. The court filed an order entitled "Summary Judgment", requiring Wolfe to endorse the title to the Cobra over to Whitcraft

and to extinguish all security interests in the car. The court also entered judgment for Wolfe against Sports Cars and Singerman for $62,000.

I

We find that the trial court acted improperly in granting summary judgment in favor of Whitcraft in regard to his claim against Wolfe. While a court may render summary judgment in favor of the party opposing the motion rather than the moving party, see GCR 1963, 117.3, summary judgment was not proper in this case.

One barrier to summary judgment arises from the fact that Sports Cars was not notified of the claim set forth in Whitcraft's complaint for declaratory relief. Sports Cars was a necessary party with a definite interest in the subject matter and whose presence was essential to permit the court to render complete relief. Thus, Sports Cars should have been a named defendant in the lawsuit. While Whitcraft's cause of action was later consolidated with Wolfe's cause of action against Sports Cars, the record contains no indication that Sports Cars was ever notified of Whitcraft's claim and its possible effect on Sports Cars' interests.

Secondly, summary judgment pursuant to GCR 1963, 117.2(3) is proper only if there is no genuine issue as to any material fact and the party in whose favor judgment is granted is entitled to judgment as a matter of law. In addition to the fact that Sports Cars might possibly raise genuine issues of fact, the trial court acted improperly in holding an "evidentiary hearing" for summary judgment purposes. A motion based on GCR 1963, 117.2(3) is designed to test the factual support for a claim. *Maccabees Mutual Life Ins Co v Dep't of Treasury,* 122 Mich App 660, 663; 332 NW2d 561

(1983), *lv den* 417 Mich 1100.15 (1983). The court must consider the pleadings, affidavits, and other available evidence and be satisfied that the claim or position asserted cannot be supported by evidence at trial because of some deficiency which cannot be overcome. *Maccabees Mutual Life Ins Co, supra.* The court must give the benefit of any reasonable doubt to the party opposing the motion and inferences are to be drawn in favor of that party. *Maccabees Mutual Life Ins Co, supra.* Questions turning on the credibility of witnesses cannot be resolved by summary judgment. *Kohn v Mandell,* 17 Mich App 653, 655; 170 NW2d 261 (1969). No authority exists in either the General Court Rules of 1963 or the Michigan Court Rules of 1985 allowing a court to take the testimony of witnesses pursuant to a summary judgment motion. A trial court must avoid substituting a trial by affidavit and deposition for a trial by jury. *Northern Plumbing & Heating, Inc v Henderson Brothers, Inc,* 83 Mich App 84, 90; 268 NW2d 296 (1978), *lv den* 405 Mich 845 (1979). Use of an evidentiary hearing in this case impermissibly combined summary judgment and trial procedure. Efficiency in the judicial process is not fostered if a judge must preside over the taking of testimony both before and during trial. There is no way for a trial court to accurately predict whether the evidence which is to be elicited during the course of an evidentiary hearing will conflict with other evidence and create a genuine issue of fact. Normal summary judgment procedure allows the parties to direct the court's attention to specific evidentiary proof showing that a genuine issue of fact does or does not exist.

Finally, even assuming that the evidence was properly presented, Whitcraft is not entitled to judgment as a matter of law. It is undisputed that

Sports Cars signed no document purporting to transfer title to Whitcraft. Since he never received a properly endorsed certificate of title, Sports Cars' sale to Whitcraft was void.

While the Uniform Commercial Code governs the sale of goods, where the specific goods involved are automobiles, the UCC's provisions must be reconciled with those of the Michigan Vehicle Code (MVC). The UCC does not govern the means by which automobile ownership is transferred except perhaps where the MVC contains no applicable law. *Messer v Averill,* 28 Mich App 62, 66; 183 NW2d 802 (1970), *lv den* 384 Mich 808 (1971). The MVC preempts the UCC in regard to transfers of ownership. *Colonial Dodge, Inc v Miller (On Rehearing),* 121 Mich App 466, 475; 328 NW2d 678 (1982), *rev'd on other grounds* 420 Mich 452; 362 NW2d 704 (1984). The MVC title transfer provisions require an owner or dealer to endorse on the back of the certificate of title an assignment of the title and to deliver such certificate to the purchaser at the time of delivery of the vehicle. See MCL 257.233(4); MSA 9.1933(4), MCL 257.235(1); MSA 9.1935(1); and MCL 257.239; MSA 9.1939. Failure to comply with the statutory requirements relating to endorsement and delivery of the certificate of title renders the transaction void. *Bayer v Jackson City Bank & Trust Co,* 335 Mich 99, 105; 55 NW2d 746 (1952); *Messer, supra; Roe v Flamegas Industrial Corp,* 16 Mich App 210; 167 NW2d 835 (1969). This is still the law following the most recent amendment to the MVC. *Michigan Mutual Auto Ins Co v Reddig,* 129 Mich App 631, 635; 341 NW2d 847 (1983), *lv den* 419 Mich 877 (1984). If the transfer if void, the seller remains the owner. *Reddig, supra.* A car buyer is charged with knowledge of the pertinent statutes. *Karibian v Paletta,* 122 Mich App 353, 357; 332 NW2d 484 (1983).

Since Sports Cars failed to sign the certificate, the transfer was void and summary judgment was improperly granted in favor of Whitcraft. The case is remanded for further proceedings.

## II

Because of the procedural posture of this case and the complicated nature of the issues presented, we find it appropriate to provide guidance in regard to several issues which may arise on remand. Initially, we note that the claims of both parties depend to an extent on common questions of fact and law and that both parties believe that they are entitled to possession of the car. Resolution of certain issues will affect both parties' claims and any orders entered in regard to one claim must take into account the status of the other. Thus while there is no appeal from the default judgment entered in regard to Wolfe's claim against Sports Cars, that judgment is subject to modification if necessary. See GCR 1963, 518.2; MCR 2.604(B).

We also note that, as part of the initial default judgment in Wolfe's original case against Sports Cars, the court ordered that the vehicle "be returned" to Wolfe and that it "continue in his possession until further order of the court". While the court's final judgment in this case impliedly set that order aside, we wish to make it clear that the order is set aside. At the time the default judgment was entered, Whitcraft was not a party to the suit. Thus, the order was much too broad. While the order could have directed Sports Cars, any of its agents, or any person holding the vehicle on behalf of Sports Cars to turn possession of the vehicle over to Wolfe, a general order of "possession" was improper. When Whitcraft noti-

fied the court that he had possession of the vehicle and that he personally claimed an interest in it, the court should have set the order aside. If Wolfe felt that Whitcraft had no such interest or that he had an interest in the vehicle which was superior to Whitcraft's, he could have proceeded with a claim against Whitcraft. Such claim is presently not necessary because the ownership, title, and lien priority issues have been raised in Whitcraft's action for declaratory relief.

As indicated earlier, the attempted transfer of the automobile by Sports Cars to Whitcraft was void. However, that result does not necessarily lead to the conclusion that Wolfe is entitled to the vehicle. Wolfe's complaint originally set forth one claim based on the contract and one claim seeking either enforcement of his lien or replevin. However, his amended complaint also set forth a claim of fraud. The court rules allow a party to set forth inconsistent claims. GCR 1963, 111.9(2); MCR 2.111(A). However, the relief to which a party is entitled depends on the actual facts of the case. The trial court in this case, after Whitcraft had been added as a party, found it necessary to establish the truth of the allegations of fraud in order to enable it to enter the default judgment against Sports Cars. After a hearing pursuant to GCR 1963, 520.2(2), the court found that fraud existed. Fraud in the inducement to enter into a contract does not render the instrument void but merely voidable. *Dunn v Goebel Brewing Co,* 357 Mich 693, 697; 99 NW2d 380 (1959). Because of the various claims asserted by Wolfe and because he had already been granted "possession" of the vehicle at the time that he requested money damages pursuant to his claim of fraud, we are unable to determine whether he actually sought rescission of the contract and return of the vehicle together

with other damages, or whether he sought to confirm the contract and recover monetary damages together with enforcement of his unperfected security interest. On remand, the trial court shall ascertain Wolfe's desire and, if rescission is sought, the court shall also determine whether rescission is proper in this case.

While Whitcraft presently has possession of the vehicle, the transfer from Sports Cars to Whitcraft was void. Thus, Sports Cars is entitled to the vehicle. However, if rescission of the contract between Sports Cars and Wolfe is proper and is granted by the court, Whitcraft may be ordered to give up possession to Wolfe. Moreover, if rescission is not granted, Whitcraft must give up possession to Wolfe if he (Wolfe) seeks to enforce his security interest in the vehicle. Absent rescission, we find the contract between Wolfe and Sports Cars to be enforceable.

Wolfe endorsed and delivered the certificate of title to Sports Cars when no security interests were outstanding. The fact that Sports Cars later added its own name as purchaser does not void the transfer. *Karibian v Paletta, supra,* p 358. The question remains as to whether failure to comply with the odometer statute, MCL 257.233a; MSA 9.1933(1), voids the transfer. This Court has held that lesser title-transfer defects, even those involving statutory violations, may not be fatal to a transfer of ownership. *Cf. Allstate Ins Co v Demps,* 133 Mich App 168; 348 NW2d 720 (1984), *lv den* 421 Mich 852 (1985) (failure to remove seller's license plates). Endorsement and delivery of the certificate of title are required to discourage automobile theft, and a violation of those requirements should void a transfer. *Reddig, supra,* pp 634-635. However, when the endorsement and delivery requirements are complied with, transfer of owner-

ship should ensue. The statute establishes one single document which can be relied on for a transfer of ownership. The purpose behind the statute would not be furthered by holding that a transfer is void in circumstances where the requirements are complied with. Ownership of automobiles is frequently transferred and future purchasers should be entitled to ownership when they rely on a properly executed and delivered certificate of title. The purpose of the odometer statute requirements is to prevent fraud upon the buyer and it only indirectly concerns the ownership transfer. The statute does not require the written odometer statement to be contained on or attached to the certificate of title. In order to effectuate the purposes of the MVC, we hold that failure to comply with the odometer statute requirements merely renders the transaction voidable by the purchaser. Since Sports Cars defaulted and did not seek to void the transfer in this proceeding, the contract is enforceable.

We note that Whitcraft may seek a remedy against Sports Cars if he so desires. We also note that the court may order Wolfe to cancel his duplicate title with the Secretary of State in the event that he affirms the contract. However, if rescission is granted, Wolfe is entitled to a certificate of title. In that event, the court may take whatever steps are necessary to assure that the certificate of title held by Whitcraft will be destroyed when it is no longer needed for evidentiary purposes. Furthermore, in regard to the purported security interest granted by Wolfe to his sister, such purported security interest may only be extinguished in an action against the sister. However, assuming that she agrees that the purported security interest was granted under the circum-

stances as presented by the parties in this case, it is clearly not valid. We would hope that litigation would not be necessary and that the purported security interest would be voluntarily extinguished.

We reverse the trial court's grant of summary judgment, set aside the court order, and remand for further proceedings consistent with this opinion.