Jeanne WALLMAN, Plaintiff–Appellant,

v.

RIVERSIDE AUTO SALES, INC.,
Defendant–Appellee.

No. 89–1753.

United States Court of Appeals,
Sixth Circuit.

Argued March 8, 1990.

Decided July 27, 1990.

Thomas C. Miller (argued), Freydi & Associates, Birmingham, Mich., for plaintiff-appellant.

Daniel K. Jamieson (argued), Ryan, Jamieson, Hubbell & Morris, Kalamazoo, Mich., for defendant-appellee.

Before KENNEDY and RYAN, Circuit Judges, and SMITH, District Judge.*

_____

* The Honorable George C. Smith, United States District Court for the Southern District of Ohio, sitting by designation.

KENNEDY, Circuit Judge.

Appellant Jeanne Wallman, representative of the estate of decedent Carla Rae Humphries, appeals the District Court's order granting summary judgment in favor of appellee Riverside Auto Sales, Inc. (Riverside). The District Court held that Michigan courts would apply Indiana law to determine the ownership and vicarious liability of Riverside. Under Indiana law, Riverside would not be liable. We agree that Michigan would apply Indiana law, at least to determine the issue of ownership, and AFFIRM the judgment of the District Court.

On May 1, 1987, Margaret Isaac purchased a 1976 Pontiac Firebird from Riverside in Elkhart, Indiana, for $2,000 pursuant to a written contract. The purchase price was reduced by $1,000 in exchange for Ms. Isaac's husband Ray Isaac's agreement to paint the exterior of Riverside's offices. Ms. Isaac paid $400 in cash and financed the $600 balance of the purchase price. She agreed to pay $50 each week until the balance was paid and to pay an additional $50 in sales tax. Ms. Isaac was given a 21–day temporary license tag. She did not receive a certificate of title to the vehicle. Ms. Isaac never paid in full for the car. Mr. Isaac never painted Riverside's dealership as promised. Appellant alleges that Riverside kept a key to the Isaac automobile and retained a signed power of attorney giving Riverside the ability to transfer title back to itself if Ms. Isaac got behind on her payments.

On August 23, 1987, Carla Rae Humphries, a Michigan resident, was killed in a rear-end collision involving the Isaacs' car. At the time of the accident, an Indiana State Trooper and some Michigan police officers were pursuing Isaac. The chase began in Indiana, continued across the state line into Michigan, and culminated in the collision that caused Humphries' death.

Appellant argued below and continues to argue on appeal: (1) that Riverside was the owner of the automobile that Mr. Isaac drove at the time of the accident; (2) that Michigan law applies; and (3) that under Michigan's owner liability statute, Riverside is vicariously liable for Humphries' death. Appellee argued and continues to argue: (1) that Indiana law applies; (2) that Riverside is not an owner under Indiana law; and (3) that Riverside, even if an owner, is not liable under Indiana law. Appellant concedes that under Indiana law, "[t]o establish a vicarious liability claim against an owner of a vehicle the plaintiff must at the very least show some type of a principal/agent or master/servant relationship." *Kahn v. Cundiff*, 533 N.E.2d 164, 168 (Ind.App.), *aff'd*, 543 N.E.2d 627 (Ind. 1989). Appellant does not allege that such a relationship exists in the present case nor is such a relationship apparent. *Kahn* also notes that "[t]o establish a negligent entrustment claim against an owner of a vehicle a plaintiff must have facts showing that the owner entrusted the vehicle to a driver with knowledge that the driver was incompetent to drive the vehicle." *Id.* No such claim was made in the present case.

The District Court granted appellee's motion for summary judgment. After applying Michigan's choice of law rules in determining which state's law should govern, the court found that Michigan courts would apply Indiana law to appellant's claim against Riverside. Applying Indiana law, the court found that Riverside was not liable, for even if Riverside retained ownership of the car, under Indiana law an owner is not liable for the negligence of a driver, even where that driver uses the car with the owner's permission. Appellant appeals the District Court's judgment.

We must sustain the District Court's summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988).

■ The parties do not dispute that Michigan law governs the determination of whether the law of Michigan or the law of Indiana governs the present dispute. *See*

*Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Michigan's choice of law rules in automobile tort cases are discussed in *Olmstead v. Anderson*, 428 Mich. 1, 400 N.W.2d 292 (1987). The *Olmstead* court noted that in *Sexton v. Ryder Truck Rental, Inc.*, 413 Mich. 406, 320 N.W.2d 843 (1982), "a majority of the Court abandoned lex loci delicti as an absolute rule." *Olmstead*, 428 Mich. at 23, 400 N.W.2d at 292. As the court noted in *Olmstead*, "the chief conceptual underpinnings of lex loci delicti—certainty and predictability—are no longer viable." *Id.* at 25, 400 N.W.2d at 292. The court further noted, "Since no specific methodology was adopted, each case must be evaluated on the circumstances presented." *Id.* at 24, 400 N.W.2d at 292. "The question to be resolved is whether this case presents a situation in which reason requires that foreign law supersede the law of this state." *Id.*

The District Court determined that the case before us presents such a situation. The court concluded that although under a traditional lex loci delicti analysis, Michigan law would apply, a number of factors rendered this case one requiring that Indiana law supersede Michigan law. The court reasoned that the alleged liability of Riverside is premised upon the fact that it transferred possession but not ownership of the car to the Isaacs. This transfer of possession occurred in Indiana. The court stated, "As the court noted in *Sexton*, the owners' liability statute 'is not regulating the tortious conduct of the operators of vehicles, but rather the relationship between the owner and the operator.'" District Court Opinion (quoting *Sexton*, 413 Mich. at 436, 320 N.W.2d 843). In *Sexton*, the court noted that because in the cases before it the owner-operator relationship took place exclusively in Michigan, "'[t]he chain of events which leads to damage or injury' was forged" in Michigan. *Sexton*, 413 Mich. at 437, 320 N.W.2d at 843. Applying this reasoning to the case before us, because the alleged owner-operator relationship took place exclusively in Indiana, the chain of events leading to the injury in the present case was forged in Indiana. Thus, the District Court reasoned, Indiana would

seem to have a greater interest in the resolution of the present dispute than would Michigan.

The District Court further found that it would be unfair to apply Michigan law. *See Olmstead*, 428 Mich. at 25, 400 N.W.2d 292 (stating that "[u]nquestionably, no unfairness would result, therefore, in applying Michigan law."). The District Court contrasted the situation in *Olmstead* with that of the present case. In *Olmstead*, both parties were citizens of a state allowing recovery of unlimited damages in wrongful death actions and both insurers were thus on notice regarding potential unlimited liability. The present case involves a defendant operating in Indiana, a state that does not impose vicarious liability upon all automobile owners who lend their vehicles to other drivers. *Kahn*, 533 N.E.2d at 168. The law in Michigan, appellant's state of residence, is markedly different. Further, the court noted that Indiana, unlike Michigan, recognizes that a transfer of ownership may occur even where the certificate of title to a vehicle does not change hands. *Compare Royal Indemnity Ins. Co. v. Shue*, 134 Ind.App. 322, 326–28, 182 N.E.2d 796, 799 (1962) *with Whitcraft v. Wolfe*, 148 Mich.App. 40, 51, 384 N.W.2d 400 (1985), *appeal denied*, 425 Mich. 865 (1986). The court also noted that unlike the situation in *Olmstead*, "[t]here is no indication, and no reason to assume, that Riverside insured against the possibility that its sales of automobiles would be governed by Michigan law or that it would some day be held accountable under that state's owners' liability statute."

 We are confident that Michigan courts would, at the very least, apply Indiana law to determine the ownership of a vehicle sold in Indiana to Indiana residents by an Indiana car dealer. Although we acknowledge that "the plaintiff's residence is a paramount consideration in determining which state's law to apply in a tort case," *Penwest Development Corp. v. Dow Chemical Co.*, 667 F.Supp. 436, 442 (E.D.Mich.1987), we believe that in deciding the question of ownership, the plaintiff's residence is not as significant as the place where the ownership was created and the owner resides. A choice of law application

that would require transfer of automobile ownership to comply with the title transfer laws of 49 other states would be completely unworkable. For the purpose of determining ownership, "reason requires that foreign law supersede the law of this state." *Olmstead*, 428 Mich. at 24, 400 N.W.2d at 292. Michigan has no interest in having its statutes control what is required to pass title to automobiles in other states. Indiana, on the other hand, has a strong interest in having its law apply to the steps necessary to pass title to automobiles on other goods within its borders. For a myriad of reasons, buyers and sellers of automobiles need to know when ownership passes. For example, they need to know who buys insurance, who has an insurable interest, who inherits, and who can give permission to others to operate the vehicle. When the entire transaction of sale occurs in a single state, between residents of that state, we can see no basis for any other state to be interested in the formalities required to transfer ownership.[1] While Michigan does not recognize a transfer of ownership without a transfer of the certificate of title, Mich.Comp.Laws § 257.233(4) (1977); *Whitcraft*, 148 Mich.App. at 51, 384 N.W.2d at 400, Indiana requires only a completed sale of the vehicle. *Royal Indemnity*, 182 N.E.2d at 799. The failure to transfer the certificate of title does not control whether there was a sale. Under Indiana law, a retail installment sales contract covering a used automobile is a transaction in goods. Such transactions are governed by Article 2 of the U.C.C., which has been adopted by Indiana. *See* Ind. Code § 26-1-2-101, *et seq.* (1974). *First Nat'l Bank of Milltown v. Schrader*, 176 Ind.App. 391, 375 N.E.2d 1124 (1978). A sale under the U.C.C. is the passing of title from seller to buyer for a price. Indiana Code § 26-1-2-401(2) provides:

> Unless otherwise explicitly agreed, *title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any*

*reservation of a security interest and even though a document of title is to be delivered at a different time or place,* and in particular despite any reservation of a security interest by the bill of lading.

Ind.Code § 26-1-2-401(2) (1974) (emphasis added).

Under Indiana law, although Riverside retained a security interest, Ms. Isaac was the owner of the vehicle notwithstanding her failure to return to the dealership to get her certificate of title. Because Riverside was not the owner of the vehicle driven by Mr. Isaac, the court properly granted it summary judgment.

No genuine issue of material fact exists and appellee was entitled to judgment as a matter of law. Accordingly, we AFFIRM the District Court's order granting appellee's motion for summary judgment.

1. Michigan law is consistent with this conclusion. "Michigan continues to follow the *Restatement (First) of Conflict of Laws* rule that the nature and effect of a contract are determined by the law of the place where the contract was entered into. *Restatement (First) of Conflict of Laws* § 311 (1934)...." *Fireman's Fund Ins. Cos. v. Ex-Cell-O Corp.*, 702 F.Supp. 1317, 1328 (E.D.Mich.1988), *reconsideration denied*, 720 F.Supp. 597 (E.D.Mich.1989).