LADD v FORD CONSUMER FINANCE COMPANY, INC

Docket No. 180810. Submitted March 13, 1996, at Lansing. Decided June 7, 1996, at 9:15 A M. Leave to appeal sought.

David D. Ladd and NBD Bank, N.A., brought an action in the Genesee Circuit Court against Ford Consumer Finance Company, Inc., alleging interests in, and conversion of, a certificate of origin for a mobile home sold by Colony Homes Center, Inc., to Ladd, who had obtained a secured loan from NBD to make the purchase. Ford, under the terms of an inventory financing agreement with Colony, had paid the mobile-home manufacturer for the mobile home on behalf of Colony and had received the certificate of origin from the manufacturer. Normally, Ford would have released the certificate of origin to Colony once Colony paid Ford for the mobile home. In this case, however, Colony had obtained the proceeds of Ladd's loan from NBD but failed to pay Ford what it owed on the mobile home. NBD also sought a declaration that Ford was similarly liable for conversion with respect to six other mobile-home purchasers. The court, Judith A. Fullerton, J., granted summary disposition for Ladd and NBD, ruling that under the Uniform Commercial Code, MCL 440.1201(9); MSA 19.1201(9), Ladd was a buyer of a good in the ordinary course of business, that title to the mobile home passed from Colony to Ladd upon physical delivery of the home, MCL 440.2401(2); MSA 19.2401(2), and that Ladd's status as a buyer in the ordinary course of business protected NBD's security interest. The court determined that conversion of the title of origin was not proved and denied declaratory relief concerning the six other mobile-home purchasers. Ford appealed, and NBD cross appealed.

The Court of Appeals *held*:

1. The provisions of the Mobile Home Commission Act (MHCA), MCL 125.2301 *et seq.*, MSA 19.855(101) *et seq.*, prevail over the provisions of the UCC with respect to the transfer of title to a mobile home. Under the MHCA and the administrative rules promulgated thereunder, MCL 125.2330(3); MSA 19.855(130)(3), MCL 125.2330c (2); MSA 19.855(130c)(2), 1985 AACS, R 125.1232(1), 1991 AACS, R 125.1217(2), a licensed mobile-home dealer must prepare and file with the Department of Commerce an application for a certificate of title and attach the certificate of origin to the application, and transfer of title occurs on the date of the execution of the applica-

tion for title or the certificate of title. In this case, there was no transfer of title to Ladd because Colony did not file the required application for title.

2. Title must first transfer under the MHCA before a buyer in the ordinary course of business can, under the UCC, take free and clear of a security interest not known to the buyer. Ladd cannot be a buyer in the ordinary course of business because he did not obtain title pursuant to the MHCA.

3. The trial court did not abuse its discretion in denying the requested declaration concerning the six other mobile-home purchasers. Those purchasers were not parties to the case, the trial court was unfamiliar with the facts relating to those purchasers, and nothing prevents those purchasers from seeking relief for themselves.

4. NBD lacks a proprietary interest in the certificate of origin at issue and therefore cannot claim conversion by Ford. 1985 AACS, R 125.1232(2), which requires a lender holding a certificate of origin to surrender it upon the request of a mobile-home dealer, is for the benefit of mobile-home dealers, not other lenders.

Affirmed in part, reversed in part, and remanded.

1. SALES — MOBILE HOMES — TRANSFERS OF TITLE — MOBILE HOME COMMISSION ACT.

Transfers of title to mobile homes are governed by the provisions of the Mobile Home Commission Act and the administrative rules promulgated thereunder; accordingly, provisions of the Uniform Commercial Code dealing with buyers in the ordinary course of business do not apply unless the title-transfer requirements of the act and rules have been met (MCL 125.2301 *et seq.*; MSA 19.855 [101] *et seq.*, 1985 AACS, R 125.1232[1], 1991 AACS, R 125.1217[2]).

2. DECLARATORY JUDGMENTS — APPEAL — ABUSE OF DISCRETION.

A circuit court's decision whether to grant declaratory relief is reviewed for abuse of discretion (MCR 2.605).

3. CONVERSION — ELEMENTS.

A conversion is any distinct act of dominion wrongfully exerted over the personal property of another and occurs at the point that wrongful dominion is asserted.

*Robert A. Betts* and *Jaffe, Raitt, Heuer & Weiss* (by *Brian G. Shannon* and *Melanie LaFave*), for David D. Ladd.

*Charles Milne,* for NBD Bank, N.A.

*Bodman, Longley & Dahling* (by *Lawrence P. Hanson, David W. Barton,* and *Craig Klomparens*), for Ford Consumer Finance Company, Inc.

Before: FITZGERALD, P.J., and CORRIGAN and C. C. SCHMUCKER,[*] JJ.

CORRIGAN, J. In this case involving an issue of first impression, we hold that the specific provisions of the Mobile Home Commission Act (MHCA), MCL 125.2301 *et seq.*; MSA 19.855(101) *et seq.*, supersede the general provisions of the Uniform Commercial Code, MCL 440.1101 *et seq.*; MSA 19.1101 *et seq.*, regarding the transfer of title to mobile homes.

Defendant Ford Consumer Finance Company, Inc., (Ford) appeals as of right the order granting summary disposition in favor of plaintiffs David D. Ladd and NBD Bank, N.A., and vacating the court's previous order. Plaintiff NBD Bank, N.A., cross appeals the same order. We reverse the order granting summary disposition to plaintiffs and affirm the order on cross appeal denying plaintiff NBD's claim that Ford was liable for conversion.

### I. UNDERLYING FACTS AND PROCEDURAL HISTORY

Colony Homes Center, Inc., operated a mobile-home dealership in Flint, Michigan. To obtain its inventory, Colony entered an inventory financing agreement[1] with Ford in May 1988. Under this agreement, Colony would submit an invoice or other docu-

---

[*] Circuit judge, sitting on the Court of Appeals by assignment.

[1] Under a floor-plan financing arrangement, the creditor loans the debtor the necessary funds to purchase the inventory or finance the business' operating expenses. The inventory is then pledged as collateral to secure the loan. As inventory is sold, the debtor applies a set percentage of the purchase price to the floor plan in satisfaction of that account.

ment to Ford describing the mobile-home unit that it desired to acquire. Ford would then advance funds directly to the mobile-home manufacturer to purchase the unit on Colony's behalf. Ford obtained a security interest in Colony's entire inventory as well as all proceeds and accounts pertaining to the inventory.

Ford required the manufacturer to deliver the certificate of origin to it as a condition of financing Colony's purchase. The certificate of origin identified the manufacturer, model and serial number of the mobile home, and the original purchaser. It provided temporary evidence of ownership. Colony agreed that upon the sale of a mobile home, it would immediately repay any sum that Ford had advanced for the purchase. Colony further agreed to hold the proceeds from the sale of the homes in trust for Ford's benefit. After Colony paid in full the amount due on a mobile home, Ford agreed to release the certificate of origin to Colony to attach to the title application. Possessing the certificate of origin gave Ford additional security because Michigan law requires the certificate of origin to accompany the title application submitted to the Department of Commerce before the department issues a certificate of title. 1985 AACS, R 125.1232(1).

Plaintiff Ladd purchased a mobile home that cost $27,856.80 from Colony. Under a separate arrangement with Colony for consumer loans, plaintiff NBD financed Ladd's "out of trust"[2] purchase, without veri-

*Yamaha Motor Corp, USA v Tri-City Motors & Sports, Inc,* 171 Mich App 260, 264, n 1; 429 NW2d 871 (1988).

[2] NBD and Colony entered into an agreement under which NBD agreed to finance the consumer retail purchase of Colony's mobile homes. NBD received credit applications from customers of Colony. If the credit application was approved by NBD, the purchaser would sign a promissory note and security agreement at Colony's office. Once the purchaser signed the

fying whether Ford held the certificate of origin and without requiring Colony to pay off Ford. Colony "cashed out" its contract with NBD, without informing Ford of the out of trust sale or paying off the balance due. Colony delivered the mobile home to Ladd, along with an application for a certificate of title for filing with the Department of Commerce. Colony itself never filed the application for certificate of title. However, because Colony never repaid Ford, Ford refused to relinquish the certificate of origin. Consequently, Ladd could not obtain a certificate of title for the mobile home and NBD could not perfect its security interest in the mobile home.

Predictably, Colony ceased doing business and had no assets. Ladd and NBD thereafter sued Ford, alleging a claim and an interest in the certificate of origin. Plaintiffs alleged potential losses because plaintiff Ladd could not obtain title to the mobile home and plaintiff NBD could not perfect its security interest in the mobile home. NBD also alleged that Ford was liable for conversion because it had wrongfully retained the certificate of origin, and sought declaratory relief regarding six other allegedly similar purchases.

The trial court initially granted Ford's motion for summary disposition under MCR 2.116(C)(8) and (C)(10), ruling that no sale of the mobile home had occurred. The court reasoned that the MHCA required a certificate of title to effect a transfer of ownership. Because Ford had refused to deliver the certificate of origin to Colony, the certificate of title could not be

---

installment loan contract at the mobile-home dealership, the mobile-home dealer took the agreement to an NBD branch for "cashing." The sale of a mobile home under this arrangement is referred to as an "out of trust" sale.

issued. Thus, the out of trust sale was void and did not transfer an interest in the mobile home to plaintiff Ladd.

On rehearing, the court held that plaintiff Ladd was a buyer in the ordinary course of business under the UCC, MCL 440.1201(9); MSA 19.1201(9), who was protected by MCL 440.9307; MSA 19.9307. The trial court reasoned that title to the mobile home passed from Colony to Ladd upon physical delivery of the home under MCL 440.2401(2); MSA 19.2401(2). The trial court further opined that plaintiff Ladd's status as a buyer in the ordinary course of business protected plaintiff NBD's security interest. Finally, the trial court determined that plaintiff NBD had not proved its claim of conversion against defendant Ford and denied declaratory relief regarding the six other purchases.

## II. TITLE TRANSFER: DOES THE MHCA OR THE UCC GOVERN?

Ford initially contends that the trial court erred in holding that Colony validly transferred ownership to plaintiff Ladd under the UCC, MCL 440.2401(2); MSA 19.2401(2), at the time Ladd accepted delivery of the mobile home. We agree. This Court reviews de novo a trial court's ruling on a motion for summary disposition, *Johnson v Wayne Co*, 213 Mich App 143, 148-149; 540 NW2d 66 (1995). MCR 2.116(C)(10) tests the factual basis underlying a plaintiff's claim and permits summary disposition when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." *Id.* When deciding the motion, the court must consider the pleadings, affidavits, depositions, admissions, and

other documentary evidence available to it in a light most favorable to the opposing party. *Id.*

A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. It should be granted only if the claims are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Gazette v Pontiac*, 212 Mich App 162, 167; 536 NW2d 854 (1995). A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994).

The MHCA subjects all mobile-home sales or transfers to the certificate of title provisions of the act, except for any new mobile home owned by a manufacturer or a licensed mobile-home dealer and held for sale. MCL 125.2330(1); MSA 19.855(130)(1). Thus, a manufacturer or dealer need not apply for a certificate of title while holding the home for sale. However, upon a sale, a new owner must apply for a certificate of title with the assistance of the dealer. The effective date of the transfer of title is the date of execution of either the application for title or the certificate of title. MCL 125.2330c(2); MSA 19.855(130c) (2). MCL 125.2330(3); MSA 19.855(130)(3) specifically provides that "a mobile home shall not be sold or transferred except by transfer of the certificate of title for the mobile home pursuant to this act."

The Department of Commerce issues certificates of title for mobile homes. MCL 125.2330b; MSA 19.855(130b). Under the rules promulgated by the Mobile Home Commission under authority of the MHCA, a mobile-home dealer must prepare and file an application for a certificate of title with the Depart-

ment of Commerce. 1991 AACS, R 125.1217(2). The manufacturer's certificate of origin must be attached to the original application for the certificate of title. 1985 AACS, R 125.1232(1). To facilitate the attachment of the certificate of origin to the application for title, a lender holding the certificate of origin must surrender it to the mobile-home dealer upon request. 1985 AACS, R 125.1232(2).

The provisions of the UCC governing transfer of ownership differ radically from the MHCA. Under the UCC, without regard to a certificate of title, title to goods[3] passes to the buyer at the time and place at which the seller completes performance with respect to delivery of the goods, unless otherwise stated in the contract. *People v Lee*, 447 Mich 552, 562; 526 NW2d 882 (1994) (citing MCL 440.2401[2]; MSA 19.2401[2]). Accordingly, we must determine whether the general provisions of the UCC or the specific provisions of the MHCA control the transfer of legal ownership.

No Michigan case has considered this precise question. However, this Court has considered similar issues involving the transfer of title to automobiles and watercraft and held that the title transfer provisions of the watercraft certificates of title act (WCTA) and the Michigan Vehicle Code (MVC) preempt the UCC. *Jerry v Second Nat'l Bank of Saginaw*, 208 Mich App 87; 527 NW2d 788 (1994); *Whitcraft v Wolfe*, 148 Mich App 40; 384 NW2d 400 (1985); *Messer v Averill*, 28 Mich App 62; 183 NW2d 802 (1970). *Whitcraft, supra* at 50, applied the principle that a specific and particu-

---

[3] A mobile home is arguably a "good" under the UCC because a mobile home is a moveable thing at the time of identification to the contract. MCL 440.2105(1); MSA 19.2105(1).

lar act governs over a general act when the acts are contemporaneous and involve the same subject matter. The Court concluded that the MVC specifically governs the transfer of title to motor vehicles, and that the general title transfer provisions of the UCC, MCL 440.2401(2); MSA 19.2401(2), did not. Under the MVC, an owner or dealer must endorse on the back of the certificate of title an assignment of the title and must deliver the certificate to the purchaser at the time of delivery of the vehicle. *Whitcraft, supra* at 50 (citing MCL 257.233; MSA 9.1933, MCL 257.235[1]; MSA 9.1935[1], and MCL 257.239; MSA 9.1939). Thus, *Whitcraft* held that failure to comply with MVC dictates relating to endorsement and delivery of the certificate of title to a motor vehicle rendered the transfer void. *Id.*

Later, in construing the WCTA, MCL 281.1201 *et seq.*; MSA 18.1288(1) *et seq.*, currently MCL 324.80301 *et seq.*; MSA 13A.80301 *et seq.*, in *Jerry, supra* at 93, this Court held that the WCTA preempts the UCC regarding the transfer of title to watercraft.[4] The WCTA provides:

> A person acquiring a watercraft from the owner thereof, whether the owner is a manufacturer, importer, dealer, or otherwise, shall not acquire any right, title, claim or interest in or to the watercraft until that person has issued to him a certificate of title to the watercraft, or delivered a manufacturer's or importer's certificate for it. [MCL 281.1204(1); MSA 18.1288(4)(1), currently MCL 324.80305(1); MSA 13A.80305(1).]

---

[4] After the *Jerry* decision, the Legislature repealed the WTCA in 1995 PA 58, Part 803 and recodified the act with minor changes in MCL 324.80301 *et seq.*; MSA 13A.80301 *et seq.* The changes merely removed archaic language and references.

The MHCA's provisions, although different in some respects, are analogous to the title transfer sections of the MVC and the WCTA. Applying *Whitcraft, Messer,* and *Jerry,* we conclude that the specific certificate of title provisions of the MHCA control over the general provisions of the UCC. The MVC, the WCTA, and the MHCA are more than mere recording devices; all three acts reflect the Legislature's intent that strict statutory compliance is essential to transfer ownership.

Generally, when two statutes conflict and one is specific to the subject matter while the other is only generally applicable, the specific statute prevails. *Frank v William A Kibbe & Associates, Inc,* 208 Mich App 346, 350; 527 NW2d 82 (1995). The title provisions of the UCC, primarily MCL 440.2401; MSA 19.2401, generally govern the transfer of title to goods. The UCC does not require the owner of a mobile home to endorse and deliver a certificate of title to transfer the owner's interest in a mobile home, as does MCL 125.2330c; MSA 19.855(130c).

The transfer of title must also conform to regulations promulgated by the Mobile Home Commission under the MHCA. Colony, as a licensed dealer of mobile homes, was required to prepare and file an application for a certificate of title and to attach the certificate of origin to the application. 1991 AACS, R 125.1217(2); 1985 AACS, R 125.1232(1). Under the MHCA, upon delivery and sale of a mobile home, the effective date of a transfer of title to the home occurs on the date of the "execution of either the application for title or the certificate of title." MCL 125.2330c(2); MSA 19.855(130c)(2). Because Ford refused to relinquish possession of the certificate of origin that must be attached to the application for title, the application

for certificate of title could not be properly executed. Under an identical provision of the MVC concerning the time when title to a motor vehicle transfers, MCL 257.233(5); MSA 9.1933(5), execution of an application for certificate of title occurs when the application is sent with the necessary forms to the Secretary of State. *Goins v Greenfield Jeep Eagle, Inc,* 449 Mich 1, 14; 534 NW2d 467 (1995). We apply this construction as MCL 257.233(5); MSA 9.1933(5) to the identical language of MCL 125.2330c(2); MSA 19.855(130c) (2). Because Colony never filed a completed title application accompanied by the necessary form, the certificate of origin, title was not transferred to plaintiff Ladd.

The purchase of the mobile home was thus void. Under the MVC, the sale of a motor vehicle without an accompanying certificate of title will not transfer ownership of a vehicle to the buyer. *Goins, supra* at 13-14. Further, sale of a motor vehicle without the delivery of a certificate of title is void. *Michigan Mutual Auto Ins Co v Reddig,* 129 Mich App 631, 634-635; 341 NW2d 847 (1983). The same principle applies in this context. The sale of the mobile home to plaintiff Ladd was void; he did not acquire any right, title, claim, or interest in the mobile home.

### III. WAS PLAINTIFF LADD A BUYER IN THE ORDINARY COURSE OF BUSINESS?

Defendant Ford also contends that the trial court erroneously determined that plaintiff Ladd acquired title to the mobile home as a buyer in the ordinary course of business under the UCC, MCL 440.9307; MSA 19.9307. Again, we agree. Plaintiff Ladd did not qualify as a buyer in the ordinary course of business

because he did not first acquire title to the mobile home in conformity with the MHCA.

In *Larson v Van Horn*, 110 Mich App 369; 313 NW2d 288 (1981), this Court held that a buyer in the ordinary course of business takes title to an automobile free and clear of the security interest of a bank when title to the automobile is transferred to the buyer in conformity with the requirements of the MVC. In *Larson*, Oceanside Bank loaned Bloomfield Leasing money to purchase a Rolls Royce and took a security interest in the automobile but failed to note the lien on the vehicle's certificate of title. *Id.* at 372. Bloomfield Leasing sold the Rolls to Larson and presented Larson with a signed certificate of title, without noting Oceanside's security interest. *Id.* at 373. Larson did not apply to the state for a new certificate of title. *Id.* at 374. The trial court found that Larson was the owner of the vehicle. *Id.* at 377.

On appeal, this Court determined that Bloomfield and Larson both violated the MVC by failing to apply for a new certificate of title with the Secretary of State. *Id.* at 379. Nonetheless, the Court concluded that title to the Rolls Royce was transferred to Larson when Bloomfield Leasing signed and delivered the certificate of title to him. *Id.* Because Oceanside failed to perfect its security interest and because Larson purchased the car without actual knowledge of Oceanside's security interest, Larson took title free and clear of Oceanside's security interest. Larson was a buyer in the ordinary course of business under MCL 440.9307(1); MSA 19.9307(1). *Id.* at 379. Thus, *Larson* indicates that title must pass under the titling act before a buyer in the ordinary course of business can

take the automobile free and clear of a secured party's interest that is not known to the buyer.[5]

In *Jerry, supra,* this Court considered the conflict between the certificate of title provisions of the WCTA and the provisions regarding a buyer in the ordinary course of business. The defendant in *Jerry* argued that the UCC entrustment provision, MCL 440.2403(2); MSA 19.2403(2), permitted a merchant to transfer the rights of an entruster of a boat to a buyer in the ordinary course of business, even though the merchant did not transfer a certificate of title to the boat to the buyer in conformity with the title transfer provision of the WCTA, MCL 281.1204(1); MSA 18.1288(4)(1) (currently MCL 324.80304; MSA 13A.80304). *Jerry, supra* at 92-93. This Court rejected the defendant's argument and held that the UCC entrustment provision could not preempt the certificate of title provisions of the WCTA where title to a watercraft did not transfer by delivery of a certificate of title under the WCTA. *Id.* at 94. The UCC entrustment provision could not be reconciled with the plain meaning of MCL 281.1204(1); MSA 18.1288(4)(1) (currently MCL 324.80304; MSA 13A.80304), which effects transfer of title by issuance or delivery of a certificate of title. *Id. Jerry* did not address whether the buyer in the ordinary course of business takes title to a watercraft free of any security interest under MCL 440.9307; MSA 19.9307. The UCC entrustment provision is the Article II analogue to

---

[5] The same conclusion was reached by the United States Bankruptcy Court for the Western District of Michigan in *In re Superior Ground Support, Inc,* 140 Bankr 878, 883 (1992). The bankruptcy court concluded that under Michigan law, the "protection afforded to a buyer in the ordinary course of business of motor vehicles does not result without compliance with the Michigan Vehicle Code's provisions on the transfer of ownership." *Id.*

MCL 440.9307; MSA 19.9307, because both provisions are designed to protect good-faith purchasers from certain priority interests. See White & Summers, Uniform Commercial Code, (3d ed) § 24-16, p 1175. *Jerry* thus provides controlling authority on this issue.

As our decisions in *Larson* and *Jerry* provide, title must first transfer under the acts before a buyer in the ordinary course of business can take free and clear of a security interest not known to the buyer under the provisions of the UCC. Like the defendant in *Jerry*, Ladd cannot take advantage of the protections given a buyer in the ordinary course of business under MCL 440.9307; MSA 19.9307, unless the certificate of title to the mobile home was transferred to him. Likewise, Ladd could not have acquired title to the mobile home under the UCC entrustment provision. Without transfer of the certificate of title, title to the mobile home did not pass to plaintiff Ladd. MCL 125.2330; MSA 19.855(130). The sale was void and Ladd does not qualify as a buyer in the ordinary course.[6] Therefore, the trial court erred in finding that Ladd was a buyer in the ordinary course of business.

Despite our sympathy for these innocent plaintiffs, this Court is bound to follow the clear and unambiguous language of the title transfer provisions of the MHCA, MCL 125.2330; MSA 19.855(130). See *In re Schnell*, 214 Mich App 304, 310; 543 NW2d 11 (1995). Judicial construction of the MHCA title provisions is neither required nor permitted. *Id.* If the Legislature

---

[6] The UCC does not define the term "buyer," although courts usually focus on whether a completed sale has occurred in order to give a buyer the protection of MCL 440.9307; MSA 19.9307. White & Summers, Uniform Commercial Code, (3d ed) § 24-13, p 1165, n 2. Because Ladd did not receive title to the mobile home from Colony, a completed sale did not occur and Ladd did not qualify as buyer of the home.

intends a buyer in the ordinary course of business to take title to a mobile home under the UCC, it should plainly state so in an amended statute.

### IV. DECLARATORY JUDGMENT

On cross appeal, plaintiff NBD contends that the trial court erred in denying a declaratory judgment regarding the rights of six other purchasers of Colony mobile homes, who, like plaintiff Ladd, could not obtain title to their homes because Ford held the certificates of origin. MCR 2.605, the rule governing the trial court's authority to grant declaratory judgments, provides in part:

> (A) Power to Enter Declaratory Judgment.
> (1) In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

A circuit court's decision whether to grant declaratory relief under MCR 2.605 is reviewed for an abuse of discretion. *Allstate Ins Co v Hayes*, 442 Mich 56, 74; 499 NW2d 743 (1993). Although this Court has sometimes opined that declaratory judgments are reviewed de novo, see, e.g., *Michigan Residential Care Ass'n v Dep't of Social Services*, 207 Mich App 373, 375; 526 NW2d 9 (1994), the Supreme Court's decision regarding the governing standard of review plainly controls. *Hauser v Reilly*, 212 Mich App 184, 187; 536 NW2d 865 (1995). Therefore, we are constrained to apply an abuse of discretion standard.

The trial court did not abuse its discretion in denying NBD's request for declaratory judgment. The six other purchasers were not parties in this case. The

trial court stated that it was not familiar with the facts surrounding the six other mobile-home purchases and did not know whether the litigants had been properly notified of the instant proceedings. The court reasoned that nothing would preclude it from considering these six cases in due course. The trial court did not abuse its discretion by denying declaratory relief regarding the six other purchases.

### V. CONVERSION

Finally, plaintiff NBD contends that Ford wrongfully converted the certificate of origin by refusing to deliver it to Colony. We disagree. NBD has an unperfected security interest in the mobile home. NBD asserts a proprietary interest in the certificate of origin under a Mobile Home Commission rule, 1985 AACS, R 125.1232(2), that requires the lender holding the certificates of origin immediately to surrender the certificates upon request of the mobile-home dealer.

A conversion is any distinct act of dominion wrongfully exerted over the personal property of another and occurs at the point that wrongful dominion is asserted. *Attorney General v Hermes*, 127 Mich App 777, 786; 339 NW2d 545 (1983). Plaintiff NBD lacks a proprietary interest in the certificates of origin under the Mobile Home Commission's administrative rule. The benefit of the rule runs toward the mobile-home dealer who can request the delivery of the certificate from the lender. Further, the mobile-home dealer must file the original application for mobile-home title at the time of the sale of the mobile home. See 1991 AACS, R 125.1217(2). Therefore, plaintiff NBD had no right or obligation to possess the certificates of origin and defendant Ford had no obligation to release the

certificates to NBD. Accordingly, the trial court properly dismissed plaintiff NBD's conversion claim.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.