ROBERSON v OCCUPATIONAL HEALTH CENTERS OF AMERICA, INC

Docket No. 186020. Submitted October 9, 1996, at Detroit. Decided
        December 3, 1996, at 9:00 A.M.

    Annette Roberson brought an action in the Wayne Circuit Court
        against Occupational Health Centers of America, Inc., and one of
        its managers, alleging that the defendants' termination of the plain-
        tiff's employment violated the Whistleblowers' Protection Act, MCL
        15.361 *et seq.*; MSA 17.428(1) *et seq.*, and the Civil Rights Act, MCL
        37.2101 *et seq.*; MSA 3.548(101) *et seq.* The court, J. Phillip Jourdan,
        J., granted summary disposition for the defendants. The plaintiff
        appealed.

        The Court of Appeals *held*:

        1. To establish a prima facie case under the Whistleblowers' Pro-
        tection Act, a plaintiff must demonstrate that the plaintiff was
        engaged in a protected activity as defined by the act, the plaintiff
        was subsequently discharged, and there existed a causal connec-
        tion between the protected activity and the discharge. In this case,
        the plaintiff failed to show that the defendants received notice of
        her filing with state authorities of a complaint of occupational
        health and safety violations at the defendants' Dearborn office and
        therefore failed to demonstrate the existence of a causal connec-
        tion between her claimed reporting of occupational health and
        safety violations and her discharge from employment. The trial
        court correctly ruled that the plaintiff failed to establish a prima
        facie case under the Whistleblowers' Protection Act.

        2. The plaintiff's claim pursuant to the Civil Rights Act of racial
        discrimination under the disparate impact theory required a show-
        ing that a facially neutral employment practice burdened a pro-
        tected class of persons more harshly than others. Although the
        plaintiff presented evidence to support her claim that the Dearborn
        office was in worse condition than the defendants' other offices
        and that the majority of the employees assigned to the Dearborn
        office was African-American, the plaintiff failed to present any evi-
        dence suggesting that the majority of white employees was
        assigned to other offices, that the employees in the other offices
        were predominantly white, or that African-Americans were more
        likely to be assigned to the Dearborn office. The trial court cor-

rectly determined that the plaintiff failed to establish a prima facie case of racial discrimination under the Civil Rights Act.

Affirmed.

1. MASTER AND SERVANT — WHISTLEBLOWERS' PROTECTION ACT — RETALIATORY DISCHARGE — PRIMA FACIE CASE — APPEAL.

In order to establish a prima facie case of retaliatory discharge under the Whistleblowers' Protection Act, a plaintiff must establish that the plaintiff was engaged in a protected activity as defined by the act, that the plaintiff was subsequently discharged, and that a causal connection existed between the protected activity and the discharge; the determination whether the evidence establishes a prima facie case as a matter of law is reviewed de novo on appeal (MCL 15.362; MSA 17.428[2]).

2. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — DISPARATE IMPACT.

A prima facie case under the Civil Rights Act of employment discrimination under the disparate impact theory requires a showing that a facially neutral employment practice burdened a protected class of persons more harshly than others (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

*Law Offices of Thomas E. Marshall* (by *Thomas E. Marshall* and *Nancy Brewer*), for the plaintiff.

*DeWitt, Balke & Vincent, P.L.C.* (by *Charles C. DeWitt, Jr.,* and *Cathleen C. Jansen*), for the defendants.

Before: MICHAEL J. KELLY, P.J., and HOOD and H. D. SOET,* JJ.

PER CURIAM. Plaintiff appeals as of right from an order granting summary disposition to defendants in this wrongful discharge case. Her claims were based on violations of the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.*, and the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* We affirm.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff, an African-American woman, was hired by defendant Occupational Health Centers of America, Inc., (OHCA) on November 22, 1993, and worked primarily in its Dearborn office. Plaintiff and other employees of that office complained to defendant Tom James and other OHCA managers regarding physical conditions of the office, including rodent and insect infestation, leaky ceilings, sewer backups, exposed wiring, and electrical short circuits. On a Michigan Department of Public Health (DPH) form dated both November 29, 1993, and December 9, 1993, plaintiff complained about the conditions in the Dearborn office. Plaintiff's employment with OHCA was terminated on January 12, 1994. Plaintiff brought a two-count action, and defendants moved for summary disposition of both claims pursuant to MCR 2.116(C)(10). Defendants claimed that plaintiff was terminated because of her tardiness and absenteeism. Defendants' motion was granted.

We review a trial court's decision regarding a summary disposition motion de novo. *Ladd v Ford Consumer Finance Co, Inc*, 217 Mich App 119, 124; 550 NW2d 826 (1996). A motion brought under MCR 2.116(C)(10) tests the factual basis of a claim and when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law," summary disposition is proper. MCR 2.116(C)(10); *Ladd, supra*. The moving party must specifically identify those issues for which it believes there is no genuine disputed fact, and, in opposing the motion, the nonmoving party may not rely on mere allegations or denials in its pleadings, but must set forth specific facts through affidavits or

other permitted evidence to demonstrate that there exists a genuine issue for trial. MCR 2.116(G)(4). The trial court must consider all affidavits, pleadings, depositions, admissions, and other documentary evidence filed or submitted by the parties in deciding the motion. MCR 2.116(G)(5). The evidence must be considered in a light most favorable to the nonmoving party. *Ladd, supra* at 125.

Plaintiff argues that the trial court erred in finding that she failed to create a genuine factual dispute with respect to a prima facie claim under the WPA. We disagree.

We review whether a plaintiff set forth evidence to establish a prima facie case under the WPA de novo. *Terzano v Wayne Co*, 216 Mich App 522, 526; 549 NW2d 606 (1996). The WPA protects an employee from discharge, threats, or other discrimination regarding her employment because she "reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule . . . ." MCL 15.362; MSA 17.428(2). To establish a prima facie case, a plaintiff must demonstrate that (1) the plaintiff was engaged in a protected activity as defined by the act, (2) the plaintiff was subsequently discharged, and (3) there existed a causal connection between the protected activity and the discharge. *Id.* It is clear that by filing a complaint with the DPH, plaintiff was engaged in protected activity. The parties do not dispute that plaintiff was discharged following her filing of the complaint. Plaintiff asserts that the trial court erred in concluding that she failed to demonstrate the existence of a causal connection between the filing of the complaint and her discharge.

"[A]n employer is entitled to objective notice of a report or a threat to report by the whistleblower." *Kaufman & Payton, PC v Nikkila*, 200 Mich App 250, 257; 503 NW2d 728 (1993). Plaintiff argues that she provided evidence that she had told a manager that she was about to report the conditions of the building to the Occupational Safety and Health Administration (OSHA) and was terminated as a result. We find that plaintiff failed to provide evidence to demonstrate a question of fact regarding this issue.

The following exchange took place during plaintiff's deposition:

> *Q.* Did you tell anybody at OHC that you had filed this complaint?
>
> *A.* Kathy [a manager] knew.
>
> *Q.* You say, "Kathy knew." How do you know that Kathy knew?
>
> *A.* I told her I was going to do it if they didn't get the mice out of here.
>
> *Q.* Well, now, what exactly is it that you tell [sic] Kathy?
>
> *A.* I said—the only thing I said—we were on the phone and I said, "Well, Kathy, if they don't do something about these mice, I'm going to have to go to OSHA about this."

Plaintiff was again questioned on this topic:

> *Q.* You told—you had a conversation with Kathy in which you indicated, "You know, if this doesn't get fixed or solved, I'm going to file this complaint."
>
> *A.* No. That's not what I said. What I said was, "I'm going to call OSHA."

The trial court discounted plaintiff's later statement as her paraphrasing what she said to Kathy. As noted by the trial court, plaintiff was earlier asked specifi-

cally what she had told Kathy, and she responded in specific terms.

With the exception of her statement to Kathy, plaintiff testified that she told no one that she had filed a complaint with OSHA. We find plaintiff's statement to Kathy to fall short of giving her employer notice of a report or a threat to report the deplorable conditions of the building.

Plaintiff further asserts that the week before her termination, OSHA inspectors came to the office and that she had received a letter from OSHA that indicated that they had been to the building. Therefore, she argues, defendants had notice that she had filed a complaint. Again, plaintiff has provided insufficient evidence to create an issue of fact.

Plaintiff testified at her deposition that a man from OSHA was at the office the week before she was terminated. Defendants' counsel asked her what the inspector's name was, and plaintiff responded: "Oh, I don't know. He went straight to the office. And what happened was Gladys came in the office to tell me the OSHA people were there. And I said, 'Well, that's fine.'" Plaintiff also testified that she saw the man "when he flashed his badge. He had a badge." We first note that plaintiff did not indicate that she read the man's badge or otherwise personally confirmed that he was an OSHA inspector. Additionally, Gladys' alleged statement to plaintiff that representatives of OSHA were on the premises directly contradicts documentary evidence provided by defendants. These statements are the only evidence provided to establish that an inspector was at the office before plaintiff was terminated.

Plaintiff further testified that she received (1) confirmation from OSHA that they had received her complaint and (2) a letter indicating that they had been to the building. Then, apparently the week following her termination, OSHA mailed plaintiff a letter informing her that they had investigated her claim. Plaintiff may not rest on these mere conclusions and allegations, but was required to provide documentary evidence in support of these claims. MCR 2.116(G)(4). This she did not do.

Plaintiff did not provide the court with the "little white" card she purportedly received from OSHA confirming its receipt of her complaint. However, she did submit a letter, dated January 11, 1994, sent to OHCA from the DPH, informing OHCA that a report alleging hazardous working conditions had been received by the DPH. The letter asked that OHCA investigate the allegations and advise the DPH of the findings and when corrective actions would be taken. The DPH also informed OHCA that if it did not receive a response by the stated date, an "investigation may be scheduled." Defendants provided evidence that this letter was received by OHCA on January 13, 1994, the day following plaintiff's termination. This letter does not support plaintiff's assertion that an inspector visited the site before her termination.

Defendants submitted to the trial court a December 29, 1993, letter sent to plaintiff from the DPH. This letter indicated that the DPH had received plaintiff's complaint and that "[a]n investigation of these issues will be conducted by letter to the employer." Other documentary evidence provided by defendants in the lower court included a second letter sent to plaintiff from the DPH, dated January 11, 1994, from the DPH's

district office in Westland. Again, plaintiff was informed that her complaint had been received. This letter further stated: "In an effort to reduce our backlog, complaints meeting certain criteria are initially responded to by letter to the employer. We have determined that your complaint is in this category and have sent the enclosed letter to the employer." And finally, defendants provided a copy of an inspection report from the Department of Labor, which reflected that the office was inspected on January 13, 1994, by a safety officer from the Department of Labor, who did not contact OHCA before arriving for the inspection. Plaintiff has failed to come forth with any documentary evidence to demonstrate that, contrary to these documents, the office was visited by inspectors from the DPH before her January 12, 1994, termination.

After reviewing this evidence in a light most favorable to plaintiff, we conclude that she failed to establish a prima facie case under the WPA. She has not demonstrated the existence of a causal connection between her protected conduct and her discharge. Because there was no genuine issue of material fact and defendants were entitled to judgment as a matter of law, the trial court properly granted summary disposition for defendants under MCR 2.116(C)(10).

Plaintiff next argues that the trial court erred in finding that there existed no genuine issue of material fact with respect to her disparate impact claim under the Civil Rights Act. We disagree.

To establish a prima facie case of discrimination under the Civil Rights Act under the theory of dispa-

rate impact,[1] plaintiff was required to show, in addition to the fact that she was a member of a protected class, that "a facially neutral employment practice burden[ed] a protected class of persons more harshly than others." *Reisman v Regents of Wayne State Univ*, 188 Mich App 526, 538-539; 470 NW2d 678 (1991). Although she presented evidence to support her claim that the Dearborn office was in worse condition than other OHCA offices and that the majority of the OHCA employees assigned to the Dearborn office was African-American, plaintiff failed to present any evidence suggesting that the majority of white employees was assigned to other offices, that the staff members in other OHCA offices were predominately white, or that African-Americans were more likely to be assigned to the Dearborn office. In fact, the evidence demonstrated that the majority of the staff in an OHCA office in Detroit, which plaintiff admitted was in good condition, was African-Americans. Because plaintiff failed to present evidence that employees of different races were treated differently, she failed to establish a prima facie case of race discrimination under the disparate impact theory.

Affirmed.

---

[1] We note that although plaintiff uses "disparate treatment" to refer to her argument, it appears that she has attempted to set forth a claim under the theory of "disparate impact."