RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0228p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

KIM THOMPSON,

  *Plaintiff-Appellant,*

  *v.*

No. 05-2676

ARAMARK SCHOOL SUPPORT SERVICES, INC.,

  *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 04-00339—Robert Holmes Bell, Chief District Judge.

Submitted: April 20, 2007

Decided and Filed: June 19, 2007

Before: DAUGHTREY and GIBBONS, Circuit Judges; SCHWARZER, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Michael F. Smith, BUTZEL LONG, Bloomfield Hills, Michigan, Bethany Steffke Sweeny, Rosalie Beth Harrison, BUTZEL LONG, Detroit, Michigan, for Appellee. Kim Thompson, Benton Harbor, Michigan, pro se.

_____

## OPINION

_____

WILLIAM W SCHWARZER, District Judge. Kim Thompson, a former food service worker employed by defendant Aramark School Support Services, Inc. (Aramark), brought this action alleging that she was terminated in violation of the Michigan Whistleblowers' Protection Act (WPA), Michigan Compiled Laws section 15.362. She contends that Aramark terminated her because she reported violations of law by Aramark, specifically the existence of unsanitary conditions in food storage and preparation areas, to the Benton Harbor School Board (the Board). The district court granted Aramark's motion for summary judgment, holding that Thompson could not establish a causal connection between her protected activity and her termination, and that, even if she did, Aramark had a legitimate, non-retaliatory reason for her termination. Finding sufficient evidence to permit a reasonable jury to find a prima facie case of violation of the WPA, we vacate the judgment and remand for further proceedings.

_____

[*]The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

## FACTS AND PROCEDURAL HISTORY

Thompson was a fry cook and cart loader employed by the Benton Harbor Area Schools (BHAS) beginning in 1995. In the later years of her employment, Thompson became involved in various problems in her workplace. In 2001, the Board decided to privatize all food service workers and Thompson along with the other workers became employees of Aramark, a change which Thompson opposed. Following privatization, MEA (the union representing the workers) negotiated a new contract with Aramark. The new contract made changes in seniority rights to which Thompson objected. Thompson then helped bring in another union, AFSCME, which negotiated a new contract. However, the new contract contained the same provisions on seniority. As a result, relations between Thompson and other employees, who held her responsible, became strained.

Rodent problems had existed in the food service operation areas throughout Thompson's tenure but worsened in 2003. In August 2003, Thompson attempted to discuss the problem with the school district superintendent but was rebuffed. In response to this incident, A.J. Haynes, Aramark's food service director, circulated a memorandum reminding Aramark employees that they were to address their complaints to their Aramark supervisor.

On December 9, 2003, Thompson appeared at a meeting of the Board during the public comment period. She complained about various aspects of Aramark's food service operation including that mice were running into the walk-in refrigerator and that there were rat droppings in and around food being served to the children. Following this meeting, Haynes called her into his office, reminded her that she should bring food service problems to a supervisor, and issued a verbal reprimand, the first step in Aramark's progressive discipline program. Around this time, Thompson began secretly taking photographs to document the rodent problem.

Thompson spoke before the Board again on February 3, 2004, and reiterated her concerns about the mouse problem and other aspects of Aramark's food operation. After this meeting, Haynes met again with Thompson and issued a letter of reprimand, constituting a final written warning, for unbecoming conduct.

Thompson's final meeting with the Board took place on March 2, when she took the Board to task for complaining about her conduct rather than serving the people. One week later Thompson attended a community meeting at which she announced her candidacy for the School Board and also distributed the pictures she had taken of the food service operation. On March 19, Thompson received a notice of suspension without pay, and on April 2, she was terminated for actions in violation of Aramark's "work rules and protocols."

Thompson filed a complaint on April 19, 2004, in Berrien County, Michigan, Circuit Court, alleging Aramark violated the WPA by terminating her in retaliation for her reports to the Board. Aramark removed the case to federal court on the basis of diversity of citizenship. Following discovery, Aramark moved for summary judgment. The district court granted Aramark's motion and entered judgment. Thompson, proceeding pro se, filed a timely notice of appeal.

## DISCUSSION

Our review of a summary judgment is de novo, using the same standard as the district court. *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). We will affirm "if the evidence is insufficient to reasonably support a jury verdict in favor of the nonmoving party." *Id.* at 150. "In arriving at a resolution, [we] must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Id.*; *see Nat'l Enters. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997).

The WPA, in pertinent part, states:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

Mich. Comp. Laws § 15.362. To establish a prima facie case of retaliation under the WPA, Thompson must show that: "(1) [she] was engaged in protected activity as defined by the act, (2) [she] was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action." *West v. Gen. Motors Corp.*, 665 N.W.2d 468, 471-72 (Mich. 2003).

It is not disputed that Thompson was discharged. As to whether she was engaged in a protected activity, the district court, after reviewing the evidence, concluded that it did not need to resolve the issue because it granted summary judgment on other grounds. Aramark has not raised the issue on appeal, and thus the issue before us is whether Thompson has come forward with sufficient evidence to raise a triable issue on whether she was discharged "*because*" she had engaged in a protected activity.

The district court held that Thompson had failed as a matter of law to establish a causal connection between her actions and subsequent dismissal. The court found that Thompson had a duty to report unsanitary conditions in the food service area to her supervisors and it was her failure to report that led to her dismissal. Her disregard of her employment duties, the court found, not her speeches to the school board, caused the dismissal. Citing to *West*, 665 N.W.2d at 472-73, the district court held that the temporal connection between her conduct and termination was not sufficient to establish a prima facie case under the WPA.

The record, however, contains substantial evidence that there was more than a temporal connection between Thompson's conduct and her dismissal. Haynes stated that prior to December 2003, Thompson had never been disciplined and had performed her job. Deposition of A.J. Haynes, J.A. 533-34. The reprimand she received on December 16 was her first and at his deposition Haynes agreed that it was "for her comments at the December 9th Board meeting." Deposition of A.J. Haynes, J.A. 107-08, 519-20. Thompson recalled that at her meeting with Haynes, he asked her how she could work for Aramark and go to a Board meeting and talk about Aramark. Deposition of Kim Thompson, J.A. 619. When Haynes called Thompson to his office on February 9, following the February 3 Board meeting, he reprimanded her again, stating that, "what you said . . . was an attack and accusation against Aramark . . . . You questioned Aramark's integrity." Transcript of February 9 Meeting, J.A. 641. He issued a "final written warning" that day "for unbecoming conduct displayed on Tuesday, February 3, 2004." Letter of Reprimand, J.A. 638. The warning referred to her "offensive comments" to the Board on February 3 and December 9 and concluded that her actions "were inappropriate and will not be tolerated." Letter of Reprimand, J.A. 638. Thompson was suspended on March 19, 2004, approximately two weeks after speaking at the March 2 Board meeting. Letter of Suspension, J.A. 643. She was terminated on April 2 for what Haynes testified were the "false allegations" she made to the Board. Deposition of A.J. Haynes, J.A. 519-20; *see also* Letter of Termination, J.A. 646.

This evidence distinguishes this case from others in which Michigan courts found no causal connection. In *Shallal v. Catholic Social Services*, plaintiff knew her discharge was imminent before the protected activity on which she based her whistleblower claim. *Shallal v. Catholic Social*

*Services*, 566 N.W.2d 571, 579 (Mich. 1997). Other plaintiffs failed to show a causal connection because the evidence indicated the employer either terminated plaintiff before finding out about the protected activity or because the employer knew of the activity but considered it inconsequential. *West,* 665 N.W.2d at 473 (finding summary judgment appropriate because the supervisors did not care about plaintiff's activity and were not part of the decision to terminate plaintiff); *Roberson v. Occupational Health Ctrs. of Am., Inc.*, 559 N.W.2d 86, 88 (Mich. Ct. App. 1996) (finding summary judgment appropriate because the supervisor terminated plaintiff before finding out about the activity). Thompson's case is more akin to that of the plaintiff in *Henry v. City of Detroit*, where plaintiff, a decorated police officer who had never been reprimanded, was forced to retire or take a demotion after giving deposition testimony that had upset the chief of police. *Henry v. City of Detroit,* 594 N.W.2d 107, 112 (Mich. Ct. App. 1999). The court there held that, "[w]hether the deposition or plaintiff's job performance was the real reason for defendants' action against plaintiff was a question properly left to the jury." *Id*. at 113.

The district court further held that even if Thompson could establish a prima facie case of retaliation she would be unable to prevail because Aramark had articulated a legitimate, non-retaliatory reason for its action. Once the plaintiff has proved a prima facie case, the burden shifts to the defendant to articulate a legitimate business reason for the plaintiff's discharge. *Taylor v. Modern Eng'g, Inc.*, 653 N.W.2d 625, 628 (Mich. 2002). While there is evidence that Haynes had criticized Thompson for not reporting unsanitary conditions to her supervisors and for having taken pictures of these conditions, the only evidence of Aramark's reason for her termination is a letter from Haynes, dated April 2, 2004, which states in relevant part:

> We have completed our investigation and review of your actions and have determined that such actions are in violation of Aramark's work rules and protocols. Accordingly, your employment with Aramark School Support Services is terminated effective April 12, 2004.

Letter of Termination, J.A. 646. The letter leaves unanswered which actions Aramark regarded as violations—whether they were Thompson's statements to the Board or her failure to report to her supervisors—and thus it cannot be said as a matter of law that Thompson was terminated for a legitimate, non-retaliatory reason. *See Hopkins v. City of Midland*, 404 N.W.2d 744, 750 (Mich. Ct. App. 1987) (noting that at the pretext stage of the analysis the question of mixed motive, i.e., retaliation plus a legitimate business reason, must be considered).

## CONCLUSION

We therefore conclude that the evidence establishes a prima facie case under the WPA and that the question of whether Aramark acted on the basis of a legitimate, non-retaliatory reason in discharging Thompson is a disputed question of fact precluding summary judgment.

**VACATED** and **REMANDED**.